UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CATHERINE FAY VOGLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14CV1531 CDP |
| ) | |
| CAROLYN W. COLVIN ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision denying Catherine Fay Vogler's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 405(g), *et seq*. Judicial review of the Commissioner's final decision under Title II is available under Section 205(g) of the Act. 42 U.S.C. § 405(g). For reasons that follow, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 13, 2011, Vogler protectively filed a Title II application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., alleging disability beginning September 18,

2010.[1] Vogler cited degenerative disk disease, depression, carpal tunnel syndrome, high blood pressure, and bladder problems as her limiting conditions. Tr. 247. Vogler's claim was initially denied, and she appealed the denial to an administrative law judge (ALJ).[2] After a hearing on February 11, 2013, held by video conference, the ALJ determined that Vogler was not "disabled" under the Act. The Appeals Council denied Vogler's request for review, and the ALJ's decision stands as the final decision by the Commissioner.

In the decision issued on March 1, 2013, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since September 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: lumbar degenerative disc disease and radiculopathy, obesity, depression, and an anxiety disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1] Vogler also applied for Supplemental Security Income disability benefits on March 13, 2011. That application was denied, because Vogler was deemed to have monthly income in excess of the allowed amount. Vogler did not appeal that denial.

[2] Missouri participates in a modified form of the disability determination procedures, which eliminates the reconsideration step in the administrative appeals process. *See* 20 C.F.R. §§ 404.906, 404.966. Vogler's appeal proceeded directly from initial denial to ALJ review.

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch; must avoid all exposure to excessive vibration; must avoid all exposure to hazards such as unprotected heights and operational control of moving machinery; and is limited to simple, routine, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 3, 1965 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 18, 2010, through the date of this decision (20 CFR 404.1520(g)).

Vogler raises two primary issues on appeal. First, Vogler contends that the ALJ failed to give controlling weight to the opinion of Dr. Graven or otherwise to consider properly Dr. Graven's opinion evidence. Second, Vogler argues the ALJ failed to properly consider her credibility. Vogler alleges that because of these failures, the ALJ's decision was not supported by substantial evidence.

## DISCUSSION

### Legal Standards

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

> (1) credibility findings made by the Administrative Law Judge;
> (2) the claimant's age, education, background, and work history;
> (3) medical evidence from treating and consulting physicians;
> (4) the claimant's subjective complaints relating to exertional and nonexertional impairments;
> (5) any corroboration by third parties of the claimant's impairments; and
> (6) testimony of vocational experts, when required, which is based upon a proper hypothetical question.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least one year. 20 C.F.R. § 404.1505(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(b).

Next, the Commissioner determines if the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(C). If the claimant's impairment is not severe, she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant has the Residual Functional

Capacity (RFC) to perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled.

If the claimant cannot perform her past relevant work, the burden of proof shifts and the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 20 C.F.R. § 404.1520.

The ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

**Analysis**

1. Mild Clinical Findings

The ALJ discredited Vogler's subjective testimony and opinions from her treating source and daughter, in part, because they conflicted with what he determined to be "mild" clinical evidence. Vogler argues that this finding is not supported by substantial evidence because a December 2010 EMG revealed results consistent with lower lumbar radiculopathy (Tr. 398) and because a March 2012 X-ray showed "significant" degenerative disk disease at the L2-L3 and L3-L4 vertebrae (Tr. 402).

Substantial evidence is less than preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome. *Id.* Nor may the court reverse because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

The ALJ considered the EMG and X-ray imaging but ultimately determined that the medical evidence as a whole reflected only mild conditions. MRIs of Vogler's spine revealed only mild degenerative changes with minimal disk protrusion at L3-L4; they showed no evidence for overt central canal or neural foraminal stenosis. Tr. 376. In April 2012, Vogler reported that her Percocet prescription brought her back pain to tolerable levels. Tr. 393. That same day, she

stated that the pain and tingling she experienced in her right leg was improving with Gabapentin, which eased her nerve pain, and that she wanted to resume using her treadmill when the Gabapentin was working. *Id.* Although the March 2012 X-ray showed significant degenerative disk disease, Vogler reported in June of 2012 that she was "not interested in surgery." Tr. 421. Viewing this evidence as a whole, the ALJ's characterization of Vogler's spinal conditions as "mild" is supported by substantial evidence.

    2.    Treating Source

Vogler argues that the ALJ failed to give controlling weight to Dr. Graven, who she argues was a "treating source." Dr. Graven completed a Social Security Physician's Assessment form and stated therein that Vogler could be expected occasionally to experience pain levels sufficiently severe as to interfere with her ability to maintain attention and concentration. He estimated that Vogler could stand/walk 2-4 hours without interruption out of each 8-hour workday. Dr. Graven gave the same estimate for sitting, and he stated that Vogler would need to rest for a total of 1-2 hours per 8-hour workday. He asserted that Vogler had no physical function restrictions for reaching, handling, or fingering. Although the form provided a space to write the medical findings supporting those opinions, Dr. Graven left that area blank. Finally, Dr. Graven's response to the question of whether Vogler's condition would reasonably prevent her from engaging in

sustained full-time employment at the sedentary level was: "Unsure – t[reatment] has not been optimized."

Social Security regulations require the ALJ to consider medical source opinions when assessing a disability claimant's RFC. *See* 20 C.F.R § 404.1527(b). Medical source opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments. *See* 20 C.F.R. § 404.1527(a)(2).

If a treating source medical opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be afforded "controlling weight." 20 C.F.R. § 404.1527(c)(2). However, such an opinion is not automatically controlling. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (treating source opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion" (internal quotation marks omitted)). An ALJ may discount the opinion of a treating physician if it is inconsistent with the physician's clinical treatment notes. *Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (citing *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)). It is also permissible for an ALJ to discount a treating physician's opinion that is inconsistent with the record as a whole. *See id.* at 931 (citing *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is

inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.")). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (citation omitted).

The ALJ stated that he gave little weight to the opinion of Dr. Graven because he did not document any clinical evidence to support his findings. This is an appropriate reason to discount a treating opinion. *Cf.* 20 C.F.R. § 404.1527(c)(3) (affording more weight to opinions supported by relevant medical evidence).

Vogler argues that Dr. Graven's opinion should nonetheless be entitled to some deference under the factors set forth in 20 C.F.R. § 404.1527. Those relevant factors include whether the medical source examined the claimant; whether the medical source was a treating source; the length, nature, and extent of the medical source's treatment of the claimant; the evidence provided by the medical source in support of her opinion; the consistency of the medical source's opinion with the evidence of record as a whole; the medical source's specialty; and any other factors that support or contradict the medical source's opinion. *See* 20 C.F.R. § 404.1527(c). Vogler argues that the ALJ failed to evaluate the opinion evidence based on these factors and cites specifically to Dr. Graven's specialty of orthopaedic surgery and the consistency of his opinion with the record as a whole.

The ALJ is not required to discuss every medical source factor in 20 C.F.R. § 404.1527(c) when evaluating treating-source opinions. *See Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000); *Derda v. Astrue*, No. 4:09CV01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011). In addition to addressing the absence of cited evidence, the ALJ noted that Dr. Graven's opinion appeared to reflect Vogler's self-reported limitations instead of the "rather mild objective clinical findings." The ALJ also noted that Dr. Graven qualified his opinion by stating that Vogler had not yet received optimized treatment. Although the ALJ misstated Dr. Graven's specialty as that of neurosurgery instead of orthopaedics, it does appear that the ALJ considered Dr. Graven a specialist in the type of treatment (spinal) received by Vogler. Thus, contrary to Vogler's arguments, the ALJ discussed those factors most relevant to Dr. Graven's opinion. The dispositive question, therefore, becomes whether the reasons provided by the ALJ for discounting the opinion is supported by substantial evidence.

The ALJ found that Dr. Graven's opinion appeared to be based on Vogler's self-reported limitations. A conclusory statement that is based on the claimant's subjective statements is entitled to little weight when unsupported by objective medical evidence. *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993)). The Commissioner notes that the opinion set forth in Dr. Graven's Physician Assessment followed a seven-month

gap in treatment. The opinion does not reference any supporting medical findings, and the record is devoid of any contemporaneous examination records by Dr. Graven. Under those circumstances, the ALJ's determination that Dr. Graven's opinion is based on a self-report is supported by substantial evidence.

The ALJ found that the "mild" clinical findings conflicted with Dr. Graven's assessment. As discussed above, the ALJ's determination as to the severity shown in the clinical record is supported by substantial evidence. The Commissioner points to additional inconsistencies in the record that undermine Dr. Graven's opinion. For example, Dr. Graven assessed Vogler as being able to sit for 2-4 hours without interruption; however, Vogler testified that she needed to alternate sitting and standing every 10-15 minutes. Tr. 140–41. Dr. Graven also acknowledged that he was "unsure" whether Vogler's condition would preclude her from working at the sedentary level because her treatment "has not been optimized." Tr. 443. The ALJ also found Dr. Graven's opinion to be logically inconsistent, because he stated that Vogler could stand/walk for 2-4 hours, could sit for 2-4 hours, and needed to rest for 1-2 hours per 8-hour day. Those statements do not necessarily create a logical inconsistency.[3] Nonetheless, for the other reasons discussed above, I find that the ALJ's decision to discount Dr. Graven's opinion was supported by substantial evidence.

---

[3] For example, Vogler might need to stand/walk for two hours, sit for four, and rest for two.

3. Credibility

The ALJ found that Vogler's statements regarding the intensity, persistence, and limiting effects of her symptoms to be not entirely credible. Vogler challenges this assessment. In particular, Vogler argues that the ALJ did not address her activities of daily living, improperly found that the clinical evidence was "mild," failed to recognize that she had been prescribed additional pain medications and increased dosage, and failed to consider the effectiveness and side effects of her medication.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g.*, *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include: "(1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness and side effects of any medication; and (5) the claimant's functional restrictions." *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citing

*Polaski*, 739 F.2d at 1322). The ALJ need not discuss each *Polaski* factor as long as the he considers the analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

The ALJ found that while the evidence documents significant lumbar impairments, they did not support the claimed level of pain or functional limitations. The ALJ credited Vogler's good work record and noted that a lack of insurance and financial difficulties impaired her ability to obtain treatment. Still, the ALJ relied heavily on medical evidence. He noted the mild MRI findings, the lack of nerve root compromise, and lack of significant canal stenosis, as well as favorable reports from physical therapists. As discussed above, the ALJ did not err in determining that Vogler's medical records reflected mild conditions.

Physical therapy notes from April 2012 state that Vogler was unable to walk for exercise, could not cook and bake, and required some assistance with showering. Tr. 395. At that time, Vogler reported that she was able to do most basic activities with pain and modifications. Vogler also reported that although she has constant back pain, Percocet brings it to a "tolerable level." Her Gabapentin improves the pain and tingling in her right leg. The physical therapist placed moderate restrictions on her piriformis muscles and hamstrings and noted she

could not raise onto her toes and could only minimally raise onto her heels. Vogler performed 27 minutes of exercise activities "well" and was instructed to perform them at home. Tr. 396.

From May to June 2012, Dr. Graven noted L4 tenderness and positive straight leg reflex. He recommended back surgery and steroidal injections. Vogler reported that she did not get the injections because she had trouble scheduling the appointment and that she was "not interested in surgery." Tr. 421. As of her August 2012 visit to her primary care provider, Vogler still had not scheduled her injections. Although Vogler had some edema in the extremities, hepatic enlargement, and abdominal tenderness, her physical examination was otherwise unremarkable. Tr. 434.

Vogler's medical records show that she consistently complained of back pain and leg tingling and numbness. But Vogler's delay in obtaining pain relief through injections and her lack of interest in surgery undermine her credibility and support the ALJ's determination that her pain was not as severe as alleged. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (finding it permissible for ALJ to consider lack of evidence that claimant sought stronger treatment when determining credibility).

The ALJ found Vogler to lack credibility, in part, because none of her healthcare providers added "more potent opiate medications" to her Percocet,[4] Feldene,[5] and Gabapentin[6] prescriptions. Vogler argues that the ALJ failed to recognize that healthcare providers added pain medications, such as Feldene, and increased the dosage of existing pain medications.

In December 2010, Vogler's pain specialist increased her Percocet from 5-325 mg, 1 Tablet as needed every 6 hours to 7.5-500 mg, 1 tablet as needed every 6 hours. Tr. 344. The Percocet dosage was reduced to 7.5-325 mg per tablet in February 2011. Tr. 359. Her doctor also prescribed Lyrica[7] in December 2010. Tr. 344. However, in January 2011, that prescription was discontinued due to somnolence and replaced with Gabapentin. Tr. 360. In March 2012, her doctor added Feldene.

---

[4] Percocet is a combination of oxycodone, an opiate analgesic used to relieve moderate to severe pain, and acetaminophen. Medline Plus, (Last Revised June 15, 2015), https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682132.html. Acetaminophen is used to relieve moderate pain and is an analgesic and antipyretic (fever reducer). Medline Plus, (Last Revised August 15, 2014), https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681004.html.

[5] Feldene is also known as Piroxicam, and is a non-steroidal anti-inflammatory medication (NSAID) that is used to relieve pain, tenderness, swelling, and stiffness caused by arthritis. Medline Plus, (Last Revised January 1, 2011), https://www.nlm.nih.gov/medlineplus/druginfo/meds/a684045.html.

[6] Gabapentin is an anticonvulsant used to control seizures and to relieve nerve pain and restless leg syndrome. Medline Plus, (Last Revised July 15, 2011), https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html.

[7] Lyrica is an anticonvulsant that is used to relieve nerve pain occurring in the extremities. Medline Plus, (Last Revised September 1, 2009), https://www.nlm.nih.gov/medlineplus/druginfo/meds/a605045.html.

Although the ALJ did not address the additions of Feldene and the substitution of Gabapentin for Lyrica in the analysis portion his credibility determination, he did state that no doctor added opiate medications to those prescriptions. That conclusion, although narrow, is supported by the record. Moreover, the record reflects that Vogler's medications treated different conditions. *See* Tr. 313 (Gabapentin: nerve spasms; Percocet: pain; Piroxicam (Feldene): anti-inflammatory); *see also* Tr. 395 (describing Percocet as bringing back pain to tolerable level; Gabapentin as improving nerve pain). The presence of multiple prescription medications supports complaints of pain. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). However, Vogler's credibility as to the extent of that pain remains undermined by her failure to follow through on the injections and her expressed disinterest in surgery. *See Gowell*, 242 F.3d at 797. To the extent that Vogler argues the ALJ failed to address the side effects of her medications, that argument is undermined by the absence from the record of any evidence of side-effects beyond somnolescence.[8]

Finally, Vogler argues that the ALJ failed to credit the third-party opinion offered by her daughter and Vogler's own testimony regarding her ability to perform daily activities. The Commissioner correctly points to inconsistencies

---

[8] Vogler reported affirmatively that she had no side effects from Naprosyn and Percocet. Tr. 344.

within the record that support the ALJ's assessment. For example, Vogler testified that she can no longer open bottles or pull-tabs or perform small manipulations. Tr. 147. Although the medical records show that Vogler had a history of carpal tunnel surgery, Tr. 352, they do not show that Vogler reported any continuing difficulties of the sort she now alleges. Additionally, Vogler reported spending one to two hours daily cleaning and ten to fifteen minutes every-other day trimming roses. These activities are inconsistent with her allegations and thereby undermine Vogler's credibility as to other sources of pain. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.").

The ALJ's decision shows that he explicitly considered the majority of the record, including Vogler's work history, complaints of pain, descriptions of daily activities, descriptions of her to perform physical therapy, and the effect of medications on her pain. In doing so, the ALJ articulated the inconsistencies between the record and Vogler's subjective statements. I find that there is substantial evidence to support the ALJ's credibility assessment.

4. <u>Residual Functional Capacity Determination</u>

Vogler implicitly contends that the ALJ's Residual Functional Capacity (RFC) determination is not supported by substantial evidence because of the above-discussed arguments. A claimant's RFC is what she can still do despite her

limitations. 20 C.F.R. § 404.1545(a). The RFC is determined by the ALJ upon review of all relevant record evidence. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002). As discussed above, the ALJ's decisions with respect to Vogler's credibility and as to the medical evidence are supported by substantial evidence.

The ALJ determined that Vogler had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch; must avoid all exposure to excessive vibration; must avoid all exposure to hazards such as unprotected heights and operational control of moving machinery; and is limited to simple, routine, repetitive tasks. This determination reflects, in part, the assessment of Dr. Graven. *See* Tr. 444 (opining on postural activities, functional restrictions, and environmental restrictions). The ALJ's RFC determination is based on substantial evidence.

The ALJ posed the RFC as a hypothetical to a vocational expert, who testified that such a person could perform any of three different jobs existing in the local and national economies. Testimony from a vocational expert based on a properly phrased hypothetical constitutes substantial evidence. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). As such, the ALJ's determination that Vogler is not

disabled is supported by substantial evidence of record.  The ALJ did not commit reversible error.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits is affirmed.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2015.